IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND WHITNEY                  :         CIVIL ACTION
                                 :
        v.                       :
                                 :
MARTIN HORN, et al.              :         NO. 99-1993

MEMORANDUM

Bartle, C.J.                                    October 30, 2008

         Before the court is the Amended Petition of Raymond
Whitney for a writ of habeas corpus under 28 U.S.C. § 2254.  He
was originally sentenced to death for first degree murder in
1982.  As will be explained in further detail, the Court of
Common Pleas of Philadelphia County resentenced Whitney to life
in prison without the possibility of parole in January, 2008.

                              I.

         The facts are viewed in a light most favorable to the
Commonwealth, which obtained a verdict of guilty.  See Lanning v.
S.E. Pa. Transp. Auth., 181 F.3d 478, 481 (3d Cir. 1999).  On
October 10, 1981, shortly before 4:00 A.M., Whitney broke into
the West Philadelphia apartment of Juliana Minor through a second
story window.  Armed with a knife, Whitney entered Minor's
bedroom where she lay in bed.  Whitney threatened to kill her if
she did not remain quiet and asked her if she recognized him.
Minor replied that she did not, even though she recognized him
from the neighborhood.  After Minor told Whitney that she had no
money, he proceeded to take valuables from her jewelry box and a

can of beer from her refrigerator.  Before he left, Whitney
disabled Minor's phone by cutting the wire, unscrewing the
mouthpiece on the handset, and removing the speaker inside the
phone.  Whitney then announced that he was in the wrong apartment
and climbed out the window onto a ledge.

         Moments later, Whitney entered a neighboring apartment
in which Jehad Taha and Mahin Murtaza, husband and wife, resided.
Upon hearing a noise in the apartment Taha got out of bed to
investigate.  Murtaza heard someone hit Taha, and she attempted
to call the police from the bedroom telephone.  Before she
completed the call, she saw Taha reappear at the bedroom door
with blood running down his chest and face.  Whitney was standing
behind him holding a knife to his neck.  Murtaza quickly hung up
the phone as Whitney threw Taha on the bed.  Whitney approached
Murtaza with the knife pointed at her chest and demanded to know
why she was on the phone.  When the police operator called back,
Whitney told Murtaza to answer and say that everything was fine.

         Whitney demanded money and jewelry from the couple and
ripped Murtaza's pierced earrings from her ears.  He announced
his intention to rape Murtaza and tore off her brassiere.
Unsatisfied with the jewelry the couple surrendered, Whitney
ordered them into the living room where Murtaza said she had left
her purse.  Taha, still bleeding, headed toward the bathroom
whereupon Whitney stabbed him before forcing him into the living
room.  Murtaza emptied the contents of her purse on the floor,
and Whitney expressed his disappointment.  He took a drink of

-2-

water from the refrigerator, hugged Murtaza, and touched her breast while reiterating his intent to rape her.  He threw her to the floor.  When Taha protested, Whitney stabbed him again. Whitney told Murtaza "after I kill him, then I am going to fuck you."  Whitney unfastened his pants and pulled out his penis. Taha tried to intervene.  Whitney attacked him yet again while repeating "I'm going to kill you."

　　　　While Taha and Whitney struggled, Murtaza was able to run out of the apartment to find help.  She encountered two police officers, Sergeant Wagner and Officer Miller, who ran back to the apartment with her.  The officers saw Whitney, covered in blood, crouched over Taha, pulling a knife out of Taha's chest. They immediately arrested Whitney.  Soon after arriving at a hospital Taha died as a result of his twenty-eight stab wounds.

　　　　In the search incident to Whitney's arrest, police recovered several items from Whitney's person that he had stolen from the two apartments.  Police also seized Whitney's blood-stained clothing and knife.  Later tests revealed that the blood was consistent with Taha's blood type.  At trial, both Minor and Murtaza, testifying for the Commonwealth, identified Whitney as their assailant.  Murtaza also identified him as the assailant of Taha.

　　　　On May 4, 1982, a jury convicted Whitney of first degree murder, two counts of robbery, two counts of burglary, attempted rape, indecent assault, terroristic threats, and two counts of possession of an instrument of crime.  The jury

sentenced him to death.  On July 15, 1986, the Pennsylvania
Supreme Court upheld the conviction and death sentence.
Whitney's judgment became final ninety days later, on October 15,
1986, when his window to file for a writ of certiorari to the
United States Supreme Court closed.

On November 13, 1990, Whitney filed a pro se petition
for collateral relief under Pennsylvania's Post Conviction Relief
Act ("PCRA "), 42 Pa. Cons. Stat. § 9501, et seq., in the Court
of Common Pleas of Philadelphia County.  The court stayed
Whitney's execution and appointed counsel.  Through counsel,
Whitney filed four amended petitions for post conviction relief
on March 8, 1991, September 23, 1991, December 17, 1991, and
June 4, 1992 respectively.  Whitney asserted that trial counsel
was ineffective in failing to:  (1) advise Whitney of his right
to testify, and to call him to testify at trial concerning, inter
alia, his intoxicated state; (2) seek a non-jury trial as Whitney
wanted; (3) present the testimony of Dr. Gerald Cooke at the
guilt phase in support of a claim of diminished capacity; (4)
object when Sergeant Robert Wagner testified that Whitney
maintained silence at the time of his arrest; (5) present
evidence of an absence of a significant history of criminal
convictions at the penalty phase; (6) argue Whitney's age as a
mitigating circumstance at the penalty phase; (7) object to jury
instructions at the penalty phase and to object to the verdict
slip which neglected to inform the jury that it need not find
mitigating circumstances unanimously; (8) object to jury

-4-

instructions at the penalty phase because the aggravating circumstance of "torture" was not defined; and (9) present witnesses on behalf of Whitney at the penalty phase.  Whitney v. Horn, 280 F.3d 240, 246-47 (3d Cir. 2002) ("Whitney II").  The Court of Common Pleas denied PCRA relief on January 3, 1995, and the Pennsylvania Supreme Court affirmed more than three years later on February 26, 1998.

Whitney filed a habeas corpus petition under 28 U.S.C. § 2254 in this court on May 6, 1999 in which he raised eighteen claims, only some of which he had presented to the state court. On June 7, 2000, we granted Whitney's petition for habeas corpus on the ground of ineffective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668 (1984).  We held that counsel had failed to object to a jury instruction which erroneously placed on the defendant the burden to prove voluntary intoxication at the time of the crime and which thus relieved the Commonwealth of its burden to prove specific intent to commit first degree murder.  Whitney v. Horn, 170 F. Supp. 2d 492, 503-04 (2000) ("Whitney I").  Because we granted relief on this ground, we did not reach Whitney's other claims.  Id. at 503. Although acknowledging Whitney's counsel was deficient, our Court of Appeals reversed on February 5, 2002 because in its view Whitney suffered no prejudice.  Whitney II, 280 F.3d at 259, 262. It remanded for consideration of Whitney's other claims.  Id. at 262.

-5-

While Whitney was awaiting a decision on his petition for certiorari, the United States Supreme Court decided Atkins v. Virginia, 536 U.S. 304 (2002).  In that case, the Court held that executing the mentally retarded violates the Eighth Amendment's prohibition on cruel and unusual punishment.  Atkins, 536 U.S. at 321.  We held Whitney's case in abeyance to allow him to pursue an Atkins hearing in the state court.  Finding the evidence of Whitney's mental retardation "overwhelming," the Court of Common Pleas vacated Whitney's death sentence and resentenced him to life without possibility of parole on January 16, 2008.  N.T. 1/16/08 at 5.  The Commonwealth did not appeal.  Whitney is now back before this court to litigate his remaining habeas corpus claims.

Of Whitney's original eighteen claims, only nine remain.[1]  As stated in Whitney's Supplemental Memorandum of Law in Support of Amended Petition for Writ of Habeas Corpus, these nine claims, with their new numeration, are:

> (1) Petitioner was denied a fair trial where his statement to the police was improperly admitted against him because his mental retardation, organic brain damage, illiteracy

---

1.  Because this is no longer a death penalty case, Whitney concedes as moot Claims One, Two, Four, Seven, Eight, Nine, Ten, and Fifteen (as originally labeled in his Amended Petition for a Writ of Habeas Corpus).  Whitney deleted Claim Sixteen after the Commonwealth challenged his Petition under Rose v. Lundy, 455 U.S. 509, 519 (1982) as a mixed petition of exhausted and unexhausted claims.  Whitney also concedes the portions of Claim Six that our Court of Appeals decided against him, but he preserves the portion of Claim Six that asserts that trial counsel failed to present all available evidence of Whitney's intoxication.

and other mental health impairments rendered him unable to make a knowing and intelligent waiver of his <u>Miranda</u> rights and any such purported waiver was involuntary;

(2) The Commonwealth's discriminatory use of peremptory challenges to exclude African Americans from the jury violated petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments;

(3) Petitioner is entitled to relief from his conviction because trial counsel ineffectively failed to investigate and present all of the available evidence of Petitioner's intoxication;

(4) The Commonwealth was improperly permitted to introduce irrelevant and inflammatory testimony that Petitioner allegedly used an alias;

(5) Petitioner's Fifth, Eighth, and Fourteenth Amendment Rights were violated when the Commonwealth's witness testified about Petitioner's post-arrest and post-<u>Miranda</u> warning silence;

(6) Trial counsel's failure to advise the Petitioner of his right to testify was ineffective assistance of counsel which violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

(7) Petitioner was denied a fair trial where defense counsel failed to investigate, develop, and present evidence of his innocence of first degree murder;

(8) To the extent that state court counsel failed to raise and/or properly litigate the issues discussed in this petition, they were ineffective, in violation of the Sixth, Eighth, and Fourteenth Amendments; and

(9) Petitioner is entitled to relief because of the cumulative prejudicial effect of the errors in this case.

Under Abu-Jamal v. Horn, 520 F.3d 272, 285 (3d Cir. 2008) trial counsel must make a contemporaneous objection to the prosecutor's discriminatory use of peremptory strikes to state a claim under Batson v. Kentucky, 476 U.S. 79 (1979).  Whitney concedes that his trial counsel did not make such an objection, but he requested that we defer ruling on his Batson claim until the Court of Appeals ruled on the Petition for Rehearing in the Abu-Jamal case.  Pet'r's Supplemental Mem. of Law in Supp. of Am. Pet. for Writ of Habeas Corpus at 25.  On July 22, 2008, our Court of Appeals denied rehearing.  Abu-Jamal, Nos. 01-9014 & 02-9001 (3d Cir. Jul. 22, 2008) (Order Den. Sur Pet. for Reh'g). Thus, Claim Two, Whitney's Batson claim, will be denied.

For the remaining eight claims, there is the threshold issue of whether we are able to reach the merits.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 governs and restricts the power of the federal courts to grant habeas corpus relief to state prisoners such as Whitney. See 28 U.S.C. § 2254.  Under § 2254(a), a federal court may entertain a habeas corpus petition from "a person in custody pursuant to the judgment of a State court and to grant relief only on the ground that they are in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A federal court may not grant relief unless the state prisoner has exhausted all available remedies in state courts.  28 U.S.C. § 2254(b)(1)(A); Lambert v. Blackwell, 134

-8-

F.3d 506, 513 (3d Cir. 1998).  Additionally, federal courts may
not entertain habeas petitions from state prisoners where the
highest state court denied relief on an "independent and adequate
state ground" such as the failure of the prisoner to comply with
a state procedural requirement.  <u>Coleman v. Thompson</u>, 501 U.S.
722, 729-30 (1991).

     To determine whether a petitioner has exhausted his
state court remedies the first inquiry is whether he has "fairly
presented" his claims to the state courts.  <u>McCandless v. Vaughn</u>,
172 F.3d 255, 260 (3d Cir. 1999).  "To 'fairly present' a claim,
a petitioner must present a federal claim's factual and legal
substance to the state courts in a manner that puts them on
notice that a federal claim is being asserted."  <u>Id.</u> at 261.  The
claim brought before the federal court must be the "substantial
equivalent" of that raised in the state court.  <u>Evans v. Court of
Common Pleas, Del. County, Pa.</u>, 959 F.2d 1227, 1231 (3d Cir.
1992).

     Of Whitney's nine claims, Claim One, Claim Three, part
of Claim Five, and Claim Six were fairly presented to state
courts.  These claims are therefore properly exhausted.

     In Claim One, Whitney alleges that his mental
impairments precluded him from making a knowing and intelligent
waiver of his rights under <u>Miranda v. Arizona</u>, 384 U.S.
436 (1966), and that his statements made after his "waiver" were
therefore improperly admitted at trial.  The Pennsylvania Supreme
Court addressed this very same argument in Whitney's direct

-9-

appeal.  See Commonwealth v. Whitney, 512 A.2d 1152, 1156-57 (Pa. 1986).  Whitney did not raise this issue in his PCRA petition, but his challenge on direct appeal, which the court rejected, placed the state courts on notice of his federal claim.  See Castille v. Peoples, 489 U.S. 346, 351 (1989).

Whitney concedes the portions of Claim Three that our Court of Appeals rejected in Whitney II but preserves the claim that trial counsel ineffectively failed to investigate and to present all available evidence of Whitney's intoxication.  This portion of the claim was fairly presented in his PRCA proceeding when Whitney alleged that trial counsel was ineffective in failing to call him to testify regarding his intoxicated state. That PCRA claim put the state courts on notice that Whitney would make an ineffective assistance of counsel claim related to trial counsel's presentation of evidence concerning Whitney's intoxication at the time of the murder.

Claim Five, that Commonwealth witnesses improperly testified about Whitney's silence not only after his arrest but also after receiving his Miranda warnings, was partially raised in the state court.  In his state PCRA petitions Whitney simply challenged the testimony regarding his post-arrest pre-Miranda silence.

The Commonwealth concedes Whitney properly raised in the state court Claim Six that trial counsel rendered ineffective assistance in failing to advise Whitney of his right to testify.

Claim Four, part of Claim Five, Claim Seven, Claim Eight, and Claim Nine were not fairly presented to the state courts.  Claim Four, that the Commonwealth improperly introduced evidence that Whitney used an alias, was not raised.  Also, as discussed above, Whitney did not previously raise the portion of Claim Five challenging the introduction of his post-<u>Miranda</u> silence.

In Claim Seven Whitney alleges that trial counsel was ineffective in failing to investigate, develop, and present evidence of Whitney's innocence of first degree murder because of intoxication.  In the state proceedings Whitney claimed that trial counsel was ineffective in failing to a call a physician to testify in support of a claim of diminished capacity and that trial counsel was ineffective in failing to call Whitney to testify about his intoxicated state.  Neither of these claims sufficiently put the state courts on notice of Whitney's much broader claim that counsel ineffectively investigated, developed, and presented evidence of Whitney's innocence of first degree murder.

Whitney did not fairly present Claim Eight in state court.  Claim Eight alleges, "To the extent that state court counsel failed to raise and/or properly litigate the issues discussed in this petition, they were ineffective."  Whitney's ineffective assistance of counsel claim in state court enumerated an entirely different list of alleged deficiencies of counsel. For a state court collateral claim to be the "substantial

-11-

equivalent" of a federal habeas claim, "both the legal theory and the facts on which a federal claim rests must have been presented to the state courts." Landano v. Rafferty, 897 F.2d 661, 669 (3d Cir. 1990).  That Whitney raised some ineffective assistance of counsel claims in state court is insufficient to exhaust all possible ineffective assistance claims based on different facts. See Picard v. Connor, 404 U.S. 270, 276-78 (1971).

In Claim Nine Whitney alleges a cumulative prejudicial effect of the previous eight claims.  Whitney made no such claim in state court.

For those claims that Whitney did not fairly present to the state court, further analysis is required to determine whether Whitney has nevertheless fulfilled the exhaustion requirement.  Under the concept of futility, a petitioner does not have to return to the state court to seek to exhaust state court remedies "if it is clear that [his] claims are now procedurally barred under [state] law." Whitney II, 280 F.3d at 250.  Pennsylvania law now imposes a strict one-year statute of limitations on the raising of any PCRA claims from the date the petitioner's judgment becomes final.  42 Pa. Cons. Stat. § 9545(b)(1); Commonwealth v. Banks, 726 A.2d 374, 375 (1999). Whitney's conviction became final on October 15, 1986.  It would therefore be futile for him now to attempt to exhaust any unexhausted state court remedies because of the one-year time bar under the statute.  Whitney II, 280 F.3d at 251-52.

Futility, without more, does not mean that this court may proceed to the merits of Whitney's unexhausted Claims Four, Seven, Eight, Nine, and part of Claim Five.  In <u>Whitney II</u> the Court of Appeals instructed us to determine under <u>Lines v. Larkins</u> whether Whitney can demonstrate "cause and prejudice" for his failure to exhaust, and if he can do so may we proceed to the merits of his unexhausted claims.  <u>Whitney II</u>, 280 F.3d at 253 (citing <u>Lines</u>, 208 F.3d 153, 166 (3d Cir. 2000)).

To prove cause, a petitioner must show that external circumstances that cannot fairly be attributed to him caused the procedural default.  <u>Lines</u>, 208 F.3d at 166 (quoting <u>Coleman</u>, 501 U.S. at 753).  Whitney's cause arises out of the 1996 amendments to the PCRA.  During the time that Whitney's PCRA petition was pending before the Pennsylvania Supreme Court, the Commonwealth's General Assembly adopted significant changes to the PCRA that took effect on January 16, 1996.  Relevant here is 42 Pa. Cons. Stat. § 9545(b), which states:

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final.[2]
> . . .
> (3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

---

2.  The three exceptions to § 9545(b)(1) are not relevant here.

-13-

Prior to the amendments, Pennsylvania law permitted prisoners to file successive petitions for post-conviction relief without any limits on time or on the number of petitions they filed.  Whitney I, 170 F. Supp. at 497 (citing Commonwealth v. Peterkin, 722 A.2d 638, 642 (1998)).  When the new law went into effect, it provided for a one-year grace period whereby anyone whose judgment became final on or before January 16, 1996 had until January 16, 1997 to file his or her first petition for post-conviction relief.  Id. at 498 (citing Act of Nov. 17, 1995 (Special Session No. 1), 1995 Pa. Laws 1118, No. 32).

As noted above, Whitney's conviction became final on October 15, 1986.  By the time the amendments to the PCRA took effect on January 16, 1996, Whitney had already filed his first PCRA petition.  In fact, it had been pending since November 13, 1990, and as of January 16, 1996 it was awaiting decision by the Pennsylvania Supreme Court.  Whitney could not avail himself of the one-year grace period in the 1996 amendments because he had already filed his first petition for post conviction relief.  The new law suddenly eliminated the possibility of filing successive petitions without time limits and made no provision for the filing of a successive PCRA petition during the grace period. One week before the grace period closed, on January 9, 1997, Whitney tried filing a second PCRA petition pro se, but the PCRA court dismissed it without prejudice on August 4, 1997 because his first petition was still pending before the Pennsylvania Supreme Court.  When, on February 26, 1998, the Pennsylvania

-14-

Supreme Court finally affirmed the denial of Whitney's first PCRA petition, Whitney was long past the one-year time limit, and he turned to federal court for relief.

For a state procedural rule such as a time bar to be an independent and adequate ground on which to deny post conviction relief, it must have been "firmly established" at the time it was applied against the petitioner. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). The rationale is one of fairness: "Novelty in procedural requirements cannot be permitted to thwart review in [federal court] applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." Id. at 423 (quoting NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 457-58 (1958)).

Since Whitney II, our Court of Appeals has repeatedly held that the PCRA's one-year time limit could not operate as a ground for denying federal habeas review of Pennsylvania prisoners' claims until the time bar became firmly established law. See Fahy v. Horn, 516 F.3d 169, 189 (3d Cir. 2008); Taylor v. Horn, 504 F.3d 416, 428 (3d Cir. 2007); Bronshtein v. Horn, 404 F.3d 700, 709-10 (3d Cir. 2005). The time bar in the January, 1996 PCRA amendments was not firmly established when the law went into effect because the Pennsylvania Supreme Court continued to invoke the relaxed waiver rule in capital cases until several years thereafter. Bronshtein, 404 F.3d at 708; see Commonwealth v. McKenna, 383 A.2d 174, 181 (1978). Under that rule, Pennsylvania courts would "transcend procedural rules" in

-15-

capital cases to promote the "overwhelming public interest" in ensuring that executions comport with the requirements of the United States Constitution.  McKenna, 383 A.2d at 181.

The Pennsylvania Supreme Court did not abandon the relaxed wavier rule until November, 1998, almost three years after the 1996 amendments took effect.  See Commonwealth v. Albrecht, 720 A.2d 693 (1998).  The court further clarified the following month that a PCRA petitioner whose judgment became final before January 16, 1996 and whose PCRA petition was pending during the grace period could not file a subsequent PCRA petition either while the first was pending, or after the first was denied if that denial occurred after January 16, 1997.  Commonwealth v. Peterkin, 722 A.2d 638, 641 (Pa. 1998).  Finally, on March 2, 1999 the court held in Commonwealth v. Banks, 726 A.2d 374, 376 (1999), that the PCRA time limit is jurisdictional and courts are not free to ignore it.  Our Court of Appeals has not decided which of these three dates, November 23, 1998, December 21, 1998, or March 2, 1999, marks the point at which the one-year time limit found in § 9545(b)(1) became a "firmly established rule," but it has implied that it was March 2, 1999.  Holland v. Horn, 519 F.3d 107, 116 n.5 (3d Cir. 2008); Bronshtein, 404 F.3d at 709 (citing Fahy v. Horn, 240 F.3d 239, 245 (3d Cir. 2001)).  Under any one of these dates it is clear that the one-year time bar was not firmly established while Whitney's first PCRA petition was pending.

In Holland v. Horn, a case similar to Whitney's, our Court of Appeals permitted a district court to hear the habeas claims of a Pennsylvania state prisoner who failed to amend his PCRA petition that was pending when Albrecht and Peterkin were decided.  519 F.3d 107, 116 n.6 (3d Cir. 2008).  Like Holland, Whitney filed his PCRA petition prior to the time the one-year time bar became firmly established.

We conclude that Whitney has established cause for not exhausting his unexhausted state claims because of his reliance on the relaxed waiver rule and because of the absence of a firmly established independent and adequate state time bar.  See Holland, 519 F.3d at 119; Lines, 208 F.3d at 166.

Having shown cause under Lines, and the absence of an independent and adequate state ground preventing our review under Holland, the next question under Lines is whether Whitney has shown prejudice as a result of being unable to raise his claims in the state courts.  The United States Supreme Court's recent decision in Fry v. Pliler, 127 S. Ct. 2321 (2007), informs our understanding of "prejudice."  In Fry, the Court held that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht." 127 S. Ct. at 2328 (citing Brecht v. Abrahamson, 507 U.S. 619 (1993)).  Although Fry dealt with a petitioner who, unlike Whitney, had raised all of his habeas claims in state court, we understand Fry to apply to Whitney's newly raised claims as well.

-17-

In <u>Fry</u>, the Court recognized that the <u>Brecht</u> standard applies "in virtually all § 2254 cases" and that it applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness."  127 S. Ct. at 2325, 2328.  Moreover, our Court of Appeals already found in <u>Whitney II</u>, which predated <u>Fry</u>, that <u>Brecht</u> "bears on our analysis" of prejudice.  280 F.3d at 257.

  We cannot determine whether Whitney suffered prejudice as a result of his inability to raise his claims in the state courts without consideration of the merits of those claims.  We therefore turn to the substance of his claims for habeas corpus relief.

III.

  In Claim One, Whitney asserts that he was "denied a fair trial where his statement to the police was improperly admitted against him because his mental retardation, organic brain damage, illiteracy and other mental health impairments rendered him unable to make a knowing and intelligent waiver of his <u>Miranda</u> rights and any such purported waiver was involuntary."  Police gave Whitney the warnings under <u>Miranda</u>, before interviewing him for more than an hour.  <u>See</u> 384 U.S. at 444-45. Whitney refused to sign a statement after the interview and he later moved to bar the prepared statement from evidence based on his incapacity to waive <u>Miranda</u> rights.

  There are two distinct aspects to a <u>Miranda</u> waiver. <u>See</u> <u>Miranda</u>, 384 U.S. at 444.  First, the waiver must have been

-18-

made voluntarily and without coercion.  <u>Colorado v. Connelly</u>, 479
U.S. 157, 167 (1986); <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986).
We find no evidence in the record that police forced or coerced
Whitney to talk to police for an hour and fourteen minutes, and
Whitney's counsel clarified at oral argument that he does not
contend his confession was coerced.  Second, a <u>Miranda</u> waiver
must have been made knowingly and intelligently.  The Supreme
Court has defined this standard of comprehension as "a full
awareness of both the nature of the right being abandoned and the
consequences of the decision to abandon it." <u>Moran</u>, 475 U.S. at
421.  The Court later clarified, however, that the fundamental
concern is simply preventing a defendant from being compelled to
testify against himself.  <u>Colorado v. Spring</u>, 479 U.S. 564,
574 (1987).  The <u>Miranda</u> waiver standard "does not require that a
criminal suspect know and understand every possible consequence
of a waiver of the Fifth Amendment privilege." <u>Id.</u>

After a lengthy hearing on the motion to suppress, the
Court of Common Pleas found that Whitney made a knowing,
intelligent, and voluntary waiver of his <u>Miranda</u> rights.  On
direct appeal, the Pennsylvania Supreme Court affirmed the denial
of the motion to suppress Whitney's statement.  It reasoned:

> As to appellant's contention that he was not
> intellectually capable of waiving his rights,
> we have consistently refused to adhere to a
> <u>per se</u> rule of incapacity to waive
> constitutional rights based on mental
> deficiencies.  <u>Commonwealth v. Hicks</u>, 353
> A.2d 803 (1976).  The fact that a defendant
> has a low I.Q. does not in and of itself
> render his confession involuntary.

> Commonwealth v. Glover, 412 A.2d 855 (1980);
> Commonwealth v. Crosby, 464 Pa. 337, 346 A.2d
> 768 (1975).... [T]he suppression court's
> finding that appellant made a knowing and
> intelligent waiver of his Miranda rights is
> supported by the record and thus, the court
> did not err in denying appellant's motion to
> suppress the incriminating statement.

Commonwealth v. Whitney, 512 A.2d at 1156-57.

The Pennsylvania Supreme Court reviewed the record from the suppression hearing and considered the evidence presented regarding Whitney's capacity to waive his Miranda rights.  Id. at 1156.  Whitney had presented an expert, Dr. Gerald Cooke, who testified that Whitney had a basic concrete understanding of the warnings and rights but that he was incapable of implementing them, especially if he was intoxicated.  Id.  Whitney also presented evidence of intoxication through the testimony of two friends who said that he had been drunk at a party on the night leading up to the murder.  Id.  On cross-examination, the defense elicited testimony from the officer who transported Whitney to police headquarters after the murder that Whitney's breath smelled of alcohol.  Id.  The Commonwealth rebutted the evidence of intoxication with the testimony of two police officers and two police detectives who said that Whitney showed no signs of intoxication at the time of his arrest or police interview, and with Whitney's own statement to the detectives that he was not drunk.  Id.  The detectives who took Whitney's statement further testified that he showed a clear understanding of his Miranda rights.  Id.

Where a state court has ruled on a habeas petitioner's claim, a federal court may only grant relief if the state court ruling was

> (1) ... contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite] result." Williams v. Taylor, 529 U.S. 362, 405 (2000). "[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s contrary to clause." Id. at 406. "A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision involv[ing] an unreasonable application of ... clearly established Federal law." Id. at 407-08.

In reviewing Whitney's claim, the Pennsylvania Supreme Court properly identified Miranda v. Arizona as the governing standard for a waiver of Fifth Amendment rights. Its decision

-21-

that there was adequate support in the record to deny the motion
to suppress was not an unreasonable analysis of the facts.  There
was ample evidence to support a finding that Whitney was
competent to waive.

        We are unpersuaded by the argument that we should defer
to the Court of Common Pleas' finding at Whitney's January, 2008
Atkins hearing that the evidence of his mental retardation is
"overwhelming."  N.T. 1/16/08 at 5.  The standard for
establishing mental retardation under Atkins to avoid execution
is different than the standard for finding a defendant
incompetent to waive his Miranda rights.  Under Atkins, a court
need merely find that the defendant is mentally retarded in order
to grant him protection from execution.  536 U.S. at 321.

        In Atkins, the Court cited with approval the American
Association of Mental Retardation's ("AAMR") definition of mental
retardation, and many courts rely on it when conducting Atkins
hearings.  Id. at 308 n.3.  That definition has three elements:
"significantly subaverage general intellectual functioning,
generally defined as an IQ of about 70 or below; accompanied by
related limitations in adaptive functioning; and onset prior to
the age of 18."  Lewis v. Quarterman, 541 F.3d 280, 283 (5th Cir.
2008).  It is clear that the judge presiding over Whitney's
Atkins hearing relied on the AAMR definition.  In finding Whitney
mentally retarded, the court made three specific factual
findings:  "that his IQ is no greater than 70, that the onset of
the mental retardation existed before the age of 18, and that the

-22-

number of adaptive deficits that the testimony revealed was considerable." N.T. 1/16/08 at 5.  The judge did not offer further analysis of Whitney's mental capacity, nor did he need to under <u>Atkins</u>.

In contrast to the <u>Atkins</u> rule, there is no <u>per se</u> rule that a showing of mental retardation alone is enough to negate a defendant's ability to waive <u>Miranda</u>.  <u>U.S. v. Robinson</u>, 404 F.3d 85, 861 (4th Cir. 2005) (collecting cases); <u>see</u> <u>Solem v. Stumes</u>, 465 U.S. 638, 648 (1984).  Rather, a court must engage in a case-by-case evaluation based on the defendant's unique circumstances.  We find no inconsistency between the ruling of the Court of Common Pleas at the <u>Miranda</u> hearing and its ruling at the <u>Atkins</u> hearing.

Even if the state courts erred and Whitney is correct that his constitutional rights under <u>Miranda</u> were violated by the failure to suppress his statement, we would still be unable to grant relief.  Under <u>Fry</u>, any error must have had a "substantial and injurious effect or influence in determining the jury's verdict."  127 S. Ct. at 2325, 2328 (quoting <u>Brecht</u>, 507 U.S. at 623).  Even if Whitney's statement was wrongfully admitted into evidence, it did not undermine the integrity of his conviction.  Without Whitney's statement, jurors would still have heard overwhelming evidence of Whitney's guilt.  Murtaza testified that she saw Whitney repeatedly stab Taha and that he said to her "after I kill him, then I am going to fuck you."  He demonstrated his intent to follow through on the threat when he tore off her

-23-

brassiere, touched her breasts, threw her to the floor, and pulled out his penis.  Police officers who arrived at the scene testified that they saw Whitney pull a knife out of Taha's bloodied chest.  Furthermore, Taha suffered no less than twenty-eight stab wounds and the blood coating Whitney's clothing and knife was consistent with Taha's, not Whitney's, blood type.

There was no question Whitney had the necessary mental state to be found guilty of first degree murder.  For instance, Whitney revealed his lucid mental state in the meticulous manner in which he disassembled Minor's phone.  Evidence of his specific intent to kill Taha is easily found in his repetition of the mantra "I'm going to kill you."  Given the overwhelming evidence of Whitney's guilt, the admission of Whitney's inculpatory statement to police, even if in error, could not have had a substantial impact on the minds of the jurors in reaching their verdict.  See Fry, 127 S. Ct. at 2325.

As a second aspect of his Miranda claim, Whitney asserts in Claim One that trial counsel was ineffective in failing to investigate appropriately and failing to present evidence of Whitney's mental retardation at the suppression hearing.[3]  To win an ineffective assistance of counsel claim, a

---

3.  Whitney also claims that counsel was ineffective in failing to present evidence of intoxication to the jury at the sentencing hearing.  In Pennsylvania, the jury's only role at a capital sentencing hearing is to determine whether the defendant should be sentenced to death or to life in prison.  42 Pa. Cons. Stat. § 9711.  Although the jury sentenced Whitney to death, when the court later vacated the sentence and reduced it to life in
(continued...)

-24-

petitioner must show under <u>Strickland v. Washington</u> that counsel's performance fell below an objective standard of reasonableness and that counsel's ineffectiveness was prejudicial to the outcome of the petitioner's case.  466 U.S. at 688, 692.

 <u>Strickland</u> imposes on attorneys a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  466 U.S. at 691. <u>Strickland</u> does not establish that an attorney must investigate "every conceivable line of mitigating evidence," but neither does it establish that a cursory investigation is sufficient where a reasonable attorney would make further inquiry.  <u>Wiggins v. Smith</u> 539 U.S. 510, 527, 533 (2003).  Ultimately, to succeed under <u>Strickland</u>, a petitioner must show that counsel's deficient performance caused prejudice.  The <u>Strickland</u> prejudice analysis is essentially the same as the prejudice analysis under <u>Fry</u>.  See <u>Albrecht v. Horn</u>, 485 F.3d 103, 139 (3d Cir. 2007); <u>Whitney II</u>, 280 F.3d at 258.  For the reasons discussed above, Whitney cannot demonstrate prejudice.  Even if trial counsel deficiently failed to investigate and present evidence of Whitney's mental retardation, the best result counsel could have achieved would have been suppression of Whitney's statement.  The admission of the statement, however, does not meet the prejudice standard set forth under <u>Fry</u> because of the overwhelming evidence of Whitney's guilt.

_____

(...continued)
prison, it extinguished any claim Whitney may have had for prejudicial error.

-25-

In Claim Three Whitney asserts that "trial counsel ineffectively failed to investigate and present all of the available evidence of [his] intoxication." Despite this broad characterization of the claim, what Whitney specifically alleges is that trial counsel failed to call an expert witness to testify regarding his blood alcohol level at the time of the homicide.

What the defense did offer at trial on the issue of intoxication was the testimony of three of Whitney's friends who had been at a party with him on the night leading up to the murder, as well as Whitney's hospital records from previous instances of intoxication. Dwayne Dillard testified that on the night of the murder, Whitney had drunk some beer and "about several cups" of rum. N.T. 4/28/82 at 286, 291. He also testified that it was his impression that Whitney was "too intoxicated" at the party. Id. at 295. Lewis White stated on the witness stand that Whitney appeared intoxicated and was "staggering," but he did not know what Whitney drank and did not testify as to the quantity of his intake. Id. at 305-06. Judy Bailey added that she saw Whitney drinking at the party, but she did not say anything about the amount. N.T. 5/03/82 at 327. The defense also introduced records from the Philadelphia General Hospital documenting an alcohol overdose Whitney experienced in 1973 and evidence of intoxication in 1976, all a number of years before the crimes in issue. Id. at 342-43. Police did not test Whitney's blood alcohol level when they arrested him. Id. at 347.

Whitney now argues that trial counsel should have offered testimony of an expert who could have calculated Whitney's blood alcohol level based on Whitney's alcohol consumption and his height and weight.  The problem with this suggestion is that no expert could have made the calculation since there was no evidence in the record as to the amount of alcohol Whitney consumed during the relevant time period. Whitney has also submitted to this court certain affidavits to show what a thorough investigation into his intoxication at the time of the murder would have revealed.  These are not helpful. The only relevant reference to Whitney's intoxication on that fateful morning is from a report of Dr. Gerald Cooke, a psychologist, who did not examine Whitney until March of 1982, some five months after the murder.  At that time Dr. Cooke wrote to trial counsel that Whitney told him he had been drinking from noon until the time of the murder, which occurred shortly before 4:00 A.M.[4]  Whitney did not say how much alcohol he had consumed. Dr. Cooke writes also, "Despite the drug and alcohol use his memory for events is adequate."  (Cooke Rep. 3).  There is nothing before us to demonstrate that trial counsel could have presented any further probative evidence of Whitney's level of

---

4.  In his report Dr. Cooke writes, "[Whitney] says that he had been drinking from noon until the time for the offense at 3:00 A.M."  (Cooke Rep. 3).  We note, however, that the Pennsylvania Supreme Court reported the murder took place shortly before 4:00 A.M., Commonwealth v. Whitney, 512 A.2d at 1154, and both Officer Miller and Sergeant Wagner testified that they headed to Taha and Murtaza's apartment in response to dispatch calls made around 4:10 A.M., N.T. 4/23/82 at 7, 39.

intoxication, and his performance was therefore not deficient. Whitney suffered no prejudice under Strickland, and we will deny Claim Three.

In Claim Five, Whitney asserts that the Commonwealth wrongfully elicited testimony about Whitney's pre-Miranda and post-Miranda silences.  For his post-arrest pre-Miranda claim, Whitney points to the testimony of Sergeant Robert Wagner that Whitney did not say anything to him when he put him up against a wall at the time of his arrest.  For the post-Miranda claim, Whitney references the testimony of Detectives Raymond Dougherty and Alan Twyman that Whitney refused to sign the statement they prepared for him after he had received his Miranda warnings and had spoken at length with them.  N.T. 4/23/82 at 15; N.T. 4/28/82 at 188, 203.

It is well-established under the Supreme Court's decision in Doyle v. Ohio that the government may not use a defendant's silence following Miranda warnings to impeach him or the explanations offered by the defense.  426 U.S. 610, 617-20 (1976).  Consequently, it was constitutional error for the detectives to comment on Whitney's refusal to sign a statement after he had received his Miranda warnings.

As with Whitney's other claims, Fry requires that we apply the substantial and injurious effect standard before we grant habeas relief.  Brecht, the case that first articulated the standard, dealt with a Doyle violation.  There the Supreme Court held that the Doyle violation was harmless error because (1) the

-28-

state's references to the defendant's post-<u>Miranda</u> silence were
infrequent, (2) they were cumulative in light of the permissible
references to the defendant's pre-<u>Miranda</u> silence, and (3) the
evidence of guilt was "if not overwhelming, certainly weighty."
<u>Brecht</u>, 507 U.S. at 639.

 In Whitney's case, the references to his post-<u>Miranda</u>
silence were infrequent.  He points to only two occurrences in
the six-day trial record, each less than a page in length.  On
the other hand, we find the Commonwealth's evidence that Whitney
did not sign a statement was different than, and therefore not
cumulative of, evidence showing Whitney's pre-<u>Miranda</u> silence at
the time of arrest.

 Most important is the third factor.  When looking at
the <u>Doyle</u> error against the weight of the other evidence, the
"crucial inquiry is the impact of the error on the minds of the
jurors in the total setting....  [W]e must of necessity weigh the
impact of evidence on the jury and cannot help but make a
judgment as to how the jury would reasonably perceive [the
defendant's] version of events with and without the <u>Doyle</u>
violation." <u>Hassine v. Zimmerman</u>, 160 F.3d 941, 955 (3d Cir.
1998) (internal quotations and citations omitted).  Evidence of
Whitney's guilt was overwhelming and eviscerates any claim of
prejudice.  The arresting officers saw Whitney pull a knife out
of Taha's bloodied chest, and two victim witnesses identified
Whitney.  Thus, we find no prejudice to Whitney as a result of
the <u>Doyle</u> violation.  We will deny Claim Five.

-29-

Doyle does not protect a defendant from references to his pre-Miranda silence immediately following his arrest. Brecht, 507 U.S. at 628; United States v. Johnson, 302 F.3d 139, 146 (3d Cir. 2002); United States v. Cummiskey, 745 F.2d 278, 278-79 (3d Cir. 1984). Whitney therefore does not have a claim for constitutional error based on the testimony of Sergeant Wagner who made reference to Whitney's conduct at the time of his arrest but prior to his being read his Miranda warnings.

In Claim Four Whitney alleges that the Commonwealth improperly introduced irrelevant and inflammatory testimony that he used an alias. Officer Tony Miller testified that when he arrived at the scene and asked Raymond Whitney his name, he responded "Raymond Long." N.T. 4/23/82 at 39-40. Routine booking questions at the time of arrest regarding the arrestee's biographical data, such as name, address, height, weight, eye color, date of birth, and current age, fall outside the scope of Miranda and do not require warnings. Pennsylvania v. Muniz, 496 U.S. 582, 601-02 (1990). It was permissible for police to ask Whitney his name and his response is not subject to Miranda suppression. We find no constitutional error or prejudice as a result of this testimony and will deny Claim Four.

In Claim Six Whitney alleges that trial counsel ineffectively failed to advise him of his right to testify. We acknowledge the fundamental right to testify on one's own behalf. See Cooper v. Oklahoma, 517 U.S. 348, 354 (1996). Whitney argues that his mental impairments rendered him unable to comprehend his

right to testify given the limited explanations counsel offered
him.  The PCRA court denied this claim.  As the Pennsylvania
Supreme Court wrote:

> The record reflects that appellant was
> advised he had a right to testify.  While
> appellant claims he did not know he had a
> right to testify or did not discuss
> testifying with counsel, he admitted that the
> trial judge had advised him of his right to
> testify.  The PCRA court did not believe
> appellant's claims, noting that he was
> evasive when examined about his prior
> contacts with his counsel.  Here, appellant
> fails to demonstrate that he did not know he
> had a right to testify, particularly since
> appellant admitted that he had been informed
> by the trial court of his right to testify
> and since the PCRA court did not otherwise
> believe appellant.

Commonwealth v. Whitney, 708 A.2d 471, 476-77 (Pa. 1998).  Under
Williams this is a reasonable application of federal law.  See
529 U.S. at 405-08.  If in fact Whitney's rights were violated,
we nonetheless find no prejudice in counsel's decision not to
place Whitney on the stand.  Testimony from Whitney would not
have caused the jury to return a different verdict.  We will deny
Claim Six.

        In Claim Seven Whitney alleges that trial counsel
ineffectively failed to investigate, develop, and present
evidence of his innocence of first degree murder.  Specifically,
he contends that trial counsel should have secured and presented
expert testimony regarding the unreliability of eyewitness
identification and, in particular, of cross-racial
identification.  Whitney has made no showing that such expert

testimony was actually available or that a failure to present it had a substantial and injurious effect on the jury verdict. Accordingly, we will deny Claim Seven.

In Claim Eight Whitney alleges that counsel was generally ineffective in failing to raise and/or properly litigate the issues Whitney now raises in his habeas petition. We have found that <u>Doyle</u> error occurred as alleged in Claim Five but nonetheless that Whitney suffered no prejudice and is not entitled to relief.  Therefore, we cannot find that he was prejudiced by trial counsel's failure to previously raise or litigate any of the issues raised here in his pending motion for habeas corpus relief.  We will deny Claim Eight.

In his final claim, Claim Nine, Whitney seeks relief based on the cumulative prejudicial effect of all of the constitutional violations he alleges.  Errors that do not individually warrant habeas relief may do so when combined if their cumulative prejudice undermines the fundamental fairness of the trial.  <u>Fahy</u>, 516 F.3d at 205; <u>Albrecht</u>, 485 F.3d at 139.  In evaluating cumulative prejudicial effect, the substantial and injurious effect standard applies.  <u>Albrecht</u>, 485 F.3d at 139. One way of asking the prejudice question is whether the "cumulative prejudice resulting from the errors ... undermined the reliability of the verdict."  <u>Id.</u>  We have not granted relief for any of Whitney's claims and found merit only to a portion of Claim Five.  Even if other claims did have merit, their cumulative prejudicial effect could not rise to the level of a

substantial and injurious effect given the overwhelming evidence of guilt.  See Fry, 127 S. Ct. at 2328.  We will therefore deny Claim Nine.

Accordingly, for the reasons set forth above, we will deny Whitney's petition for habeas corpus relief in its entirety on the merits, even if he is not procedurally barred with respect to some of his claims.[5]

---

5.  Under 28 U.S.C. § 2254(b)(2), "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND WHITNEY                    :          CIVIL ACTION
                                   :
              v.                   :
                                   :
MARTIN HORN, et al.                :          NO. 99-1993

ORDER

AND NOW, this 30th day of October, 2008, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that:

(1)  the amended petition of Raymond Whitney for a writ
of habeas corpus is DENIED; and

(2)  no certificate of appealability is issued.

BY THE COURT:

/s/ Harvey Bartle III
                                               C.J.